IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA YOUNG | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 17-5702 |
| | : | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

**TUCKER, J.**                                                                                                    **September 30th, 2021**

Presently before the Court is Plaintiff Patricia Young's First Motion for Partial Summary Judgment (ECF No. 50), Defendant The Prudential Insurance Company of America's Cross-Motion for Partial Summary Judgment (ECF No. 52) and Motion for Partial Summary Judgment on Plaintiff's Bad Faith Claims (ECF No. 53), Plaintiff's Responses in Opposition (ECF Nos. 54, 60, 62), Defendant's Replies (ECF Nos. 56, 57, 65), and the Parties' declarations and exhibits.

Upon careful consideration of the Parties' submissions, issues of material fact remain as to Plaintiff's bad faith and breach of contract claims. However, there is no issue of material fact as to Plaintiff's interpretation of the applicable Cost of Living Adjustment (COLA) increase. Accordingly, Defendant's Motion for Partial Summary Judgment on Plaintiff's Bad Faith Claims (ECF No. 53) is **DENIED** and Plaintiff's claims remain to be litigated. Plaintiff's Motion for Partial Summary Judgment related to the interpretation of the COLA provision in her disability insurance policy (ECF No. 50) is **DENIED**, and Defendant's Cross-Motion for Partial Summary Judgment as to Plaintiff's COLA claim (ECF No. 52) is **GRANTED**.

1

I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

A.  COLA Calculation

Ms. Young became an employee of the Commonwealth of Pennsylvania beginning in October 2013 and she most recently worked for the Commonwealth as an Income Maintenance Caseworker. Compl. ¶ 6. As an employee of the Commonwealth of Pennsylvania, Ms. Young participated in a group long-term disability insurance policy (the "LTD Policy"). She purchased Prudential's LTD Policy through her employer. Compl. ¶ 7. The LTD Policy provides two types of coverage, from which Ms. Young selected Option 2: the long-term disability plan which includes Cost of Living Adjustments (COLA). The plan is provided to enrollees on a contributory basis. They are informed of the amount of their contribution when they enroll. The relevant policy provisions are as follows.

The LTD Policy was not subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, et seq. ("ERISA") because it falls within ERISA's "governmental plan" exemption, pursuant to §§1002(32), 1003(b)(1). The Policy states:

> At all relevant times herein, the LTD policy uses the following definition of Total Disability: You are disabled when Prudential determines that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and you are under the regular care of a doctor, and you have a 20% or more loss in your monthly earnings due to that sickness or injury. After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury: you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and you are under the regular care of a doctor. The loss of a professional

---

[1] In the Factual and Procedural Background section, the Court draws from the facts submitted by Plaintiff in her Complaint (ECF. No. 1) and by Defendants in their Answer (ECF No. 6). The Court also references Defendant's Motion for Partial Summary Judgment (ECF No. 52), Response to Plaintiff's Statement of Material Facts (ECF No. 52-3), and Plaintiff's Response in Opposition (ECF No. 60).

or occupational license or certification does not, in itself, constitute disability.

Compl. Ex. 1 at p. 10.

The LTD Policy's monthly benefit calculation is:

At all relevant times herein, the LTD Policy provides that a monthly benefit will be calculated in the following manner:

1. Multiply your monthly earnings by 60%. If this amount is not a multiple of $1.00, it will be rounded to the next higher multiple of $1.00.
2. The maximum monthly benefit is $5,000.00.
3. Compare the answer in item 1 with the maximum monthly benefit. The lesser of these two amounts is your gross disability payment.
4. Subtract from your gross disability payment any deductible sources of Income. That amount figured in item 4 is your monthly payment.

Def. Ans. 6

COLA income adjustment information:

**If you are enrolled for Option 2, your payment will be adjusted as follows:**

Prudential will make a cost of living adjustment (COLA) on July 1 if you are disabled and not working on that date and have been disabled for all of the 12 months before that date.

Your payments will increase on that date by 3%. Adjustments will continue while you continue to receive payments for your disability.

Each month Prudential will add the cost of living adjustment to your monthly payment. When Prudential adds the adjustment to your payment, the increase may cause your payment to exceed the maximum monthly benefit.

**Cost of Living Example**:

*Your Monthly Payment = $1200*
*Cost of Living Adjustment % (COLA %) = 3%*

| *July 1 following 12 or more months of Disability Payments* | *Your monthly payment x (100% + COLA%)* | *=New Payment* |
|---|---|---|
| *1st* | $1200 x (100% + 3%) | =$1236.00 |

| 2nd | $1200 x (100% + 3%) x (100% + 3%) | =$1273.08 |
| 3rd | $1200 x (100% + 3%) x (100% + 3%) x (100% + 3%) | =$1311.27 |

*Compounding will continue while payments continue.*
Def. Ans. 7

### B. History of Plaintiff's Illness

As for Plaintiff's medical history and insurance claim, on or about May 13, 2015, Ms. Young sought treatment at the Emergency Room of St. Mary's Medical Center in Langhorne, Pennsylvania [hereinafter "St. Mary's"] because of serious left-side pain in her face, jaw, and ear, together with blurred vision in her left eye.  Ms. Young also experienced: dizziness, loss of balance, burning in her hands and feet and a sensitivity to light and sound.  On May 13, 2015, Plaintiff underwent a CT scan of her brain Compl. 5.  Plaintiff stopped working on May 13, 2015.

Emil Matarese, M.D. examined Ms. Young on May 27, 2015.  On July 16, 2015, Ms. Young made a claim for LTD benefits under Prudential's LTD Policy.  On August 12, 2015, Dr. Matarese conducted a neuro-electro-diagnostic evaluation of Plaintiff's four extremities.  On August 19, 2015, she underwent a somatosensory evoked potential test of her upper extremities. On August 26, 2015, Dr. Matarese completed an FMLA form for Ms. Young's employer in which he estimated that Ms. Young's disability, due to the illness, would last from May 15, 2015 through September 30, 2015.  He also cautioned that there was a real possibility of repeat exacerbation.  Compl. 7.

On or about September 11, 2015, Prudential's Disability Claim Manager Cynthia Russell wrote in an internal Prudential SOAP note, inter alia: "COMMENT Recommended Flight Path? 4" indicating Prudential's approach to handling Ms. Young's claim. Def. Ans. 15.  On or about

November 9, 2015, after a selected review of Ms. Young's medical records, Prudential's staff physician, Jonathan Mittleman, wrote in an internal Prudential SOAP note: Conclusions:

> While the diagnosis of multiple sclerosis does not appear to be supported by the medical records, the claimant has reported that she has been able to return to work as of October 8, 2015. It would have been reasonable that due to the severity of her self-reported symptoms, that she would have lacked sustainable capacity during the period that she was undergoing workup from the data [sic] disability through October 7, 2015.
> Compl. 9.

On November 9, 2015, Prudential approved Ms. Young's LTD benefits claim under the LTD Policy, writing:

> We determined that your disabling condition of Multiple Sclerosis was not preexisting and therefore you are eligible for LTD benefits...If you have a recurrent disability, as determined by Prudential, we will treat your disability as part of your prior claim and you will not have to complete another elimination period if: you were continuously insured under this plan for the period between your prior claim and your current disability; and your recurrent disability occurs within 6 months of the end of your prior claim. Your recurrent disability will be subject to the same terms of the plan as your prior claim.
> Compl. 9; Def. Ans. 18.

**Prudential's Denial of Plaintiff's Benefits Claims**

Ms. Young returned to work, but, on December 2, 2015, suffered an exacerbation and flare-up of her neurological symptoms and sought Emergency Room treatment at St. Mary's. She had an MRI on December 3, 2015 and followed up with Dr. Matarese. Compl. 10. Ms. Young then followed up with Dr. Matarese on or about December 8, 2015, who reported that "her current exacerbation has produced ocular motor impairment, left hemiparesis, coordination impairment and gait ataxia. She is incapable of returning to any form of gainful employment at this time." Compl. 10. Dr. Matarese did another examination on January 6, 2016 and completed

an FMLA form for Ms. Young's employer. She then reapplied for LTD benefits under the LTD Policy.

By letter dated January 15, 2016, Prudential denied Ms. Young's renewed LTD benefits claim; she requested that Prudential reconsider its denial decision. Compl. 11. Ms. Young saw Dr. Matarese on January 19, 2016 for an examination where he conducted multiple tests and where he reported significant symptoms. Compl. 12. Prudential again denied Ms. Young's renewed LTD benefits claim on February 8, 2016 without evaluating the examination notes from Dr. Matarese's January 19, 2016 exam, and instead relying on the abridged January 6, 2016 exam. Compl. 12.

Dr. Matarese saw Ms. Young again on February 29, 2016 and reported no improvement in her condition. Without the assistance of counsel, Ms. Young appealed to Prudential to reverse its continuing LTD benefit claim denial on March 8, 2016. On April 4, 2016, Dr. Matarese completed a neurological examination of Ms. Young and she was approved to begin Aubagio—a multiple sclerosis treatment drug.

On April 19, 2016, Prudential required Ms. Young to be examined by their neurologist Richard Katz, M.D.[2] Compl. 14. At no time prior to the examination did Prudential provide Dr. Katz with Dr. Matarese's office notes from Ms. Young's examinations, Ms. Young's pain management records from Pennsylvania Pain and Spine Institute, or any of Ms. Young's physical therapy records from Cornerstone Physical Therapy Associates. *Id.* Dr. Katz issued reports on April 19, 2016 and July 18, 2016 to Prudential. *Id.*

Prudential denied Ms. Young's appeal on August 22, 2016 and upheld their decision to deny LTD benefits, claiming that Dr. Katz did not believe her history or physical examination

---

[2] Plaintiff believes Dr. Katz provides favorable reports to the insurance industry.

was consistent with multiple sclerosis or any other definable disorder which could explain the symptoms or define limitations on her ability to work. Compl. 14-15.

On February 17, 2017, Ms. Young filed a detailed second appeal of Prudential's repeated LTD benefits claim denial with the assistance of counsel. She highlighted: the over two-hundred pages of medical records that Prudential had not previously obtained or reviewed before making the August 22, 2016 decision; a January 25, 2017 motor testing report confirming impairment; a February 12, 2017 physical therapy report speaking to her functionality; "Deposition testimony taken over 13 years ago in which Dr. Katz conceded that he disagreed with the opinions of actual treating physicians in thousands of instances;" and Dr. Matarese's January 29, 2017 letter report in which he wrote, *inter alia*, about Dr. Katz's findings and conclusions:

> I had the opportunity to review reports generated by Dr. Katz, a defense medical physician, dated 4/19/16 and 7/11/2016. In his reports, he indicated there were "no objective related clinical findings," and "no objective neurologic abnormality /abnormalities." However, this is completely in error. This patient has demonstrated objective neurologic deficits beginning with her initial visit of 5/15/2015, through her most recent visit of 1/15/2017, as detailed above. Please review my office records for full details concerning her neurologic examination at every visit, documenting her objective neurologic deficits.
> Compl. 16.

Prudential again denied Ms. Young's LTD benefits claim via letter dated April 18, 2017. Compl. 17.  Prudential did not have Ms. Young re-examined before this denial.  Def. Ans. 30.

Plaintiff filed this breach of contract action on December 20, 2017, alleging two counts: (1) Breach of contract-breach of the covenant of good faith and fair dealing; and (2) Bad faith, pursuant to 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West 2021).  Ms. Young seeks all contractual compensatory damages together with interest, extra-contractual compensatory,

incidental and consequential damages together with interest. She also seeks punitive damages, interest, and attorney's fees and costs as permitted by law.

## II.  LEGAL STANDARD

Summary judgment can only be awarded when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**III.   DISCUSSION**

First, this opinion will address Defendant's Motion for Summary Judgment for Plaintiff's bad faith claims in Count II. Next, this opinion will address Plaintiff's Motion for Summary Judgment as to COLA increase interpretation and Defendant's Cross-Motion for Summary Judgment regarding the COLA increase.

**A.   Bad Faith**

In Count II of Plaintiff's Complaint, she avers that Prudential failed to pay her contractually entitled benefits in bad faith, violating 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West 2021). "Under Pennsylvania law, bad faith by an insurance company can give rise to two separate causes of action: a breach of contract action for violation of an insurance contract's implied duty of good faith, and a statutory action under the terms of Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371." *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 496-97 (3d Cir. 2015). To state a claim for statutory bad faith, Plaintiff must allege facts that show: (1) Prudential did not have a reasonable basis for failing to provide LTD benefits under the policy; and (2) Prudential knew or recklessly disregarded its lack of a reasonable basis when it failed to provide LTD benefits under the policy. *See Rancosky v. Washington Natl. Ins.*, Co.,

170 A.3d 364, 376-77 (Pa. 2017).  The Pennsylvania bad faith statute allows a court to award interest, punitive damages, and attorneys' fees if it "finds that the insurer has acted in bad faith toward the insured." 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West 2021).

Bad faith claims are fact specific and depend on the conduct of the insurer vis-à-vis the insured.  *Condio v. Erie Ins. Exch.*, 2006 PA Super 92, 899 A.2d 1136, 1143 (2006).  The fact-finder must consider "all of the evidence available" to determine whether the insurer's conduct was "objective and intelligent under the circumstances." *Berg v. Nationwide Mut. Ins. Co.*, 2012 PA Super 88, 44 A.3d 1164, 1179 (2012) (citations omitted).

In the instant case, Ms. Young has provided evidence that: (1) she has significant family history of multiple sclerosis (maternal grandmother, maternal aunt, and maternal aunt's son), (2) that she went through documented, extensive testing and evaluation with neurological specialists and had a well-developed record of positive test results and symptoms indicating a long-term disability, and (3) was even approved for a multiple sclerosis medication.  Prudential then made insurance policy payment decisions based on internal reports and an independent medical examination where Prudential did not provide the examiner with her extensive records and the doctor did not review them before directly contradicting her primary care team.  Further, Ms. Young's initial claims were accepted, and Prudential's claim evaluators approved her symptoms and the initial diagnoses by her doctors as falling within their definition of disability.  Once Ms. Young officially qualified for long-term disability, Prudential began routinely rejecting her claims and apparently became uncertain about a formal multiple sclerosis diagnosis.  With this in mind, Ms. Young puts forth sufficient facts to allow a jury to conclude that Prudential acted unreasonably, and accordingly, the Motion to Dismiss Plaintiff's bad faith claims is denied.

## B. COLA

The long-term disability benefits under Prudential's group insurance contract with the Commonwealth of Pennsylvania are set out in a certificate for covered employees (the "LTD Certificate").  In her Motion for Partial Summary Judgment (ECF No. 50), Plaintiff alleges that the LTD Certificate should be interpreted to mean that the LTD benefit increases on a monthly basis due to the COLA.  ECF No. 1, ¶¶ 14-18; ECF No. 50 at 5.  A party may move for summary judgment when there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law, and in the instant case, there is no dispute to the fact that there is only one reasonable COLA increase interpretation.

An annual COLA increase is consistent with the increases demonstrated in the example provided in the LTD Certificate, custom and usage in the industry, and the plain reading and understanding of the phrase COLA.  The dictionary definition of a "cost of living adjustment" is "an increase in a person's wages, pension, etc. that is made once a year according to how much the prices of things such as food, transport, and housing have increased." *Cambridge Dictionaries Online*, Cost of Living Adjustment, https://dictionary.cambridge.org/us/dictionary/english/cost-of-living-adjustment (last visited September 29, 2021).  Importantly, the COLA calculation example in the LTD Certificate specifies exactly how the COLA increase is applied, and the calculation reflects an annual increase.  Further, it is extremely unrealistic that the Commonwealth and Prudential intended to agree to such a rapidly escalating benefit or that the Commonwealth would ever intend to pay premiums calculated on the basis of a monthly COLA increase.  An annual COLA increase is the only reasonable way to interpret the LTD Certificate.

Accordingly, the Court: (i) denies Plaintiff's Motion for Partial Summary Judgment (ECF No. 50); (ii) grants Prudential's Cross-Motion for Partial Summary Judgment; and (iii) determines as a matter of law that the LTD Contract provides for a three percent COLA increase on an annual basis, and not on a monthly basis.

### IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment as to Plaintiff's Count II for Bad Faith is **DENIED**. Plaintiff's Motion for Summary Judgment as to COLA interpretation is **DENIED**, and Defendant's Cross-Motion for Summary Judgment on COLA interpretation in Plaintiff's insurance policy is **GRANTED**.

An appropriate order follows.